IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Astrid L. Dobek, *et al.* | ) | No. CV03-297- TUC-FRZ (JCG) |
| Plaintiffs, | ) | |
| vs. | ) | **REPORT & RECOMMENDATION** |
| Wal-Mart Stores, Inc., a Delaware Corporation, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Wal-Mart Stores, Inc.'s ("Walmart") Motion for Summary Judgment on Loss of Consortium Claims of Astrid Dobek's Children filed on January 26, 2007. (Doc. No. 81.) Defendant moves for summary judgment on a loss of consortium claim filed by Plaintiffs John Luke Dobek, Alisa Haverty and Bonnie Haverty ("Plaintiffs"). Plaintiffs filed a response on March 5, 2007 (Doc. No. 84) and Defendant timely replied. (Doc. No.88.)

Pursuant to the Rules of Practice in this Court, the matter was referred to Magistrate Judge Guerin for a report and recommendation.[1] On May 2, 2007, a hearing on the Motion was held before Judge Guerin. The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying Defendant's motion for summary judgment.

---

[1] This case was originally referred to Magistrate Judge Carruth. (Doc. No. 5.) Upon Judge Carruth's retirement, the case was re-referred to Magistrate Judge Guerin. (Doc. No. 37.)

**Factual and Procedural Background**

Astrid Dobek, the Plaintiffs' mother, was injured when a wooden pallet struck her leg while she was shopping in Wal-Mart on November 21, 2001. (DSOF 1; PSOF 1.)[2] Plaintiffs allege that she now suffers from Reflex Sympathetic Dystrophy (Complex Regional Pain Syndrome) of her right lower extremity. (PSSOF 12.) The condition has spread from her right lower extremity to her left, and she has become progressively less functional since the accident occurred. (PSSOF 17.)

On June 6, 2003, Astrid Dobek filed a cause of action against Defendant in federal court. (Doc. No. 1.) On December 11, 2006, the Court granted a stipulation by the parties for Astrid Dobek to amend her complaint to add her children as plaintiffs. (Doc. No. 76.) Plaintiff filed her amended complaint on December 11, 2006. (Doc. No. 77.) On January 26, 2007, Defendant moved for summary judgment on Plaintiffs' loss of consortium claim.[3]

**Summary Judgment Standard**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

---

[2] Defendant's Separate Statement of Facts in Support of Its Motion for Summary Judgment (Doc. No. 82) is abbreviated herein as "DSOF," the portion of Plaintiff's Amended Separate Statement of Facts in Support of Opposition to Defendant's Motion for Summary Judgment (Doc. No. 95) that responds to Defendant's Statement of Facts is abbreviated herein as "PSOF" and the portion of Plaintiff's Amended Separate Statement of Facts in Support of Opposition to Defendant's Motion for Summary Judgment (Doc. No. 95) that alleges additional facts is abbreviated herein as "PSSOF."

[3] On April 26, 2007, Defendant filed a Motion to Strike unsigned affidavits from Plaintiffs' Statement of Facts. (Doc. No. 93.) Plaintiffs filed a response to the Motion to Strike; Defendant did not file a reply. By separate order, this Court denied in part and granted in part Defendant's Motion to Strike. The affidavits contested by the Motion to Strike are not relied upon in this Report and Recommendation.

1  Summary judgment is appropriate if the pleadings and supporting documents 2 "show that there is no genuine issue as to any material fact and that the moving party 3 is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v.* 4 *Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the 5 outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A genuine 6 issue exists if "the evidence is such that a reasonable jury could return a verdict for 7 the nonmoving party." *Id.*

8  A party moving for summary judgment initially must demonstrate the absence 9 of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. The moving party 10 merely needs to point out to the Court the absence of evidence supporting its 11 opponent's claim; it does not need to disprove its opponent's claim. *Id.*; *see also* Fed. 12 R. Civ. P. 56(c).

13  If a moving party has made this showing, the nonmoving party "may not rest 14 upon the mere allegations or denials of the adverse party's pleading, but . . . must set 15 forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 16 56(e). *See also Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 17 F.3d 1044, 1049 (9th Cir. 1995). The nonmoving party may not "replace conclusory 18 allegations of the complaint or answer with conclusory allegations of an affidavit." 19 *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

### Discussion

21  There are no disputed issues of material fact for purposes of this Motion. 22 The parties dispute whether Plaintiffs can make the threshold showing necessary to 23 state a claim for parental loss of consortium and, more specifically, the parties dispute 24 what the law requires to establish the claim. Defendant contends that Plaintiffs must 25 prove that the parent-child relationship has been destroyed or nearly destroyed. 26 Plaintiffs assert that the correct standard is a lower standard - whether the parent's

1 injuries are severe enough to cause a "significant interference" in the parent-child
2 relationship. Both parties agree that only after a plaintiff satisfies the judge that the
3 plaintiff's injuries meet the threshold standard, is the claim submitted to the trier of
4 fact to determine the degree of interference and the amount recoverable.

### 1.   The Applicable Standard

This Court agrees with the Plaintiffs' reading of the applicable law[4] and concludes that, under Arizona law, a cause of action for parental loss of consortium exists when a parent suffers a severe, permanent, and disabling injury that substantially interferes with the parent's capacity to interact with his children in a normally gratifying way. *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162, 1165 (1989) (citing *Villareal v. State, Dept. of Transp.*, 160 Ariz. 474, 480, 774 P.2d 213, 219 (1989)). Evidence of a significant interference in the parent-child relationship must exist; however, the injury need not be the functional equivalent of death or even be categorized as "catastrophic." *Id*.

Defendant argues that the Court cannot consider the legal standard set forth in *Pierce* because *Pierce* applies only to filial loss of consortium claims, *ie*. claims by parents for loss of a child's consortium. According to Defendant, *Villareal* sets forth a separate and "extremely high threshold" for claims brought by children for loss of a parent's consortium: the parent's mental or physical impairment must be so overwhelming and severe that the parent-child relationship is destroyed or nearly destroyed. *See Villareal*, 160 Ariz. at 480, 774 P.2d at 219. The Court finds this argument unpersuasive and concludes that Arizona case law does not support the distinction suggested by Defendant. *Villareal* does set forth the standard urged by the

---

[4] The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and therefore the Court applies the substantive law of Arizona, the forum state. *See Medical Laboratory Management Consultants v. American Broadcasting*, 306 F.3d 806, 812 (9th Cir. 2002).

Defendant. *Villareal,* however, is part of an evolving line of cases analyzing the loss of consortium cause of action in Arizona.

*Villareal* was the first Arizona Supreme Court case to recognize a cause of action by a child for loss of a parent's consortium. In *Villareal*, the court noted that the Arizona courts had been chipping away at its previous 1954 decision holding that neither a wife nor a minor child had a separate cause of action for damages resulting from the negligent injury of the husband and father. 160 Ariz. at 477, 774 P.2d at 216 (citing *Jeune v. Del E. Webb Constr. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954)). In overruling *Jeune*, the court stated, "When we find that the common law or 'judge-made law' is unjust or out of step with the times, we have no reluctance to change it." *Id.* (citations omitted). The court noted that the court of appeals had recognized a cause of action for parents' loss of an injured minor child's consortium, *id.* (citing *Ruben v. Ely*, 146 Ariz. 390, 705 P.2d 1360 (Ct.App.1985) and that the Supreme Court had extended that ruling by allowing parents to recover for loss of an adult child's consortium. *Id.* (citing *Frank v. Superior Court,* 150 Ariz. 228, 722 P.2d 955 (1986). In recognizing a child's claim for loss of consortium of his parent, the *Villareal* Court specifically recognized the value of a child's relationship with a parent, and stated:

> We believe that children have a right to enjoy a mutually beneficial relationship with their parents. The loss of a parent's love, care, companionship and guidance can severely impact a child's development and have a major influence on a child's welfare and personality throughout life. Because every individual's character and disposition impact on society, it is of highest importance to the child and society that we protect the right to receive the benefits derived from the parental relationship.

160 Ariz. at 478, 774 P.2d at 217.

Just months after the *Villareal* decision, the Arizona Supreme Court, in an opinion authored by the same Justice who wrote *Villareal*, issued its ruling in *Pierce*, which considered "plaintiff's petition for review regarding the test that must be

satisfied before parents may maintain a cause of action for loss of a child's consortium." *Pierce*, 162 Ariz. at 270, 782 P.2d at 1163. The *Pierce* decision regarded claims for loss of consortium by a parent as analogous to claims for loss of consortium by children. In setting forth the legal standard for a loss of consortium claim by a parent, the *Pierce* court specifically referenced *Villareal*; the *Pierce* court stated that it was operating "within the guidelines established in *Reben*, *Frank*, and *Villareal*," and in fact cited specifically and exclusively to *Villareal* in holding that "parents may maintain a cause of action for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way." 162 Ariz. at 272, 782 P.2d at 1165.[5]

In setting forth the standard by which to judge loss of consortium claims, the court concluded that although evidence of a significant interference in the parent-child relationship must exist, the injury need not be catastrophic to permit recovery. *Id.* The court held: "[P]arents may maintain a cause of action for loss of their child's consortium when the child suffers a severe, permanent and disabling injury rendering the child unable to exchange love, affection, care, comfort, companionship and society in a normally gratifying way." 162 Ariz. at 273, 782 P.2d at 1166.

Thus, it appears that Arizona courts treat loss of consortium claims as one body of law, regardless of whether the plaintiff is a child or a parent. *See Barnes v. Outlaw*, 192 Ariz. 283, 284-85, 964 P.2d 484, 485-86 (1998) (noting that the focus of the loss

---

[5]Before announcing the standard for loss of consortium claims, the *Pierce* court noted that *Reben, Frank,* and *Villareal*, had all involved a severe and permanent injury that had reduced the individual's ability to exchange love, affection, companionship, comfort, care and society. The court specifically noted that other jurisdictions had also recognized loss of consortium claims in situations where the injuries did not so severely damage the parent-child relationship. 162 Ariz. at 272, 782 P.2d at 1165 (citations omitted). Notably, in this discussion, the *Pierce* court did not distinguish loss of consortium claims brought by parents from those brought by children.

of consortium cause of action has shifted over time from a property right in the services of another to the intangible values of a relationship, such as companionship and affection, and summarizing the evolution from *Jeune* to *Villareal*).  There does not appear to be any basis in the Arizona court's holdings or reasoning for concluding that children claiming the lost consortium of a parent must satisfy a different and more stringent legal standard than parents claiming the lost consortium of a child.  As set forth in *Villareal* and *Pierce*, the policies underlying the recognition of parental loss of consortium claims do not permit such a distinction.  The parent-child relationship is acknowledged to be "mutually" valuable, whether the loss in that relationship be to the parent or to the child.  Accordingly, this Court concludes that under Arizona law, Plaintiffs' loss of consortium claims should be considered in light of the standard set forth in *Pierce*.  Under that standard, in order to survive summary judgment, Plaintiffs must demonstrate that Astrid Dobek's injuries are "sufficiently severe" enough to warrant a cause of action for loss of consortium.

**2.    Astrid Dobek's injuries are "sufficiently severe" enough for Plaintiffs' to survive summary judgment**

Considering the evidence in the light most favorable to the Plaintiffs, the Court finds that Astrid Dobek's injuries are "sufficiently severe" enough for the jury to determine whether Plaintiffs are entitled to prevail on their loss of consortium claim.[6] Plaintiffs presented evidence that Astrid Dobek suffers a severe, permanent and disabling injury. Astrid requires significant help from her children and others in order

---

[6] The Court is aware of only two Arizona cases addressing whether injuries are "sufficiently severe" enough to withstand a motion for summary judgment on a loss of consortium claim – *Miller v. Westcor Ltd. Partnership* 171 Ariz. 387, 395, 831 P.2d 386, 394 (App. 1991) and *Barnes v. Outlaw*, 192 Ariz. 283, 284-85, 964 P.2d 484, 485-86 (1998) – and the parties did not provide any legal citation on this issue. Plaintiffs did not analogize Astrid Dobek's injuries to the injuries in other Arizona loss of consortium cases, and in its moving papers, Defendant only analyzed Astrid Dobek's injuries under the legal standard set forth in *Villareal*.

1  to carry out the activities of daily living such as yard work, cleaning, grocery
2  shopping, running errands, cooking, etc. (PSSOF 5, 8, 9, 37, 38, 39, 40, 41, 42, 50.)
3  When her condition is "flared" she cannot tolerate performing any activities of daily
4  living and instead must spend the day in bed. (PSSOF 42, 44.) She uses a motorized
5  wheelchair in order to get out of the house and accomplish certain tasks. (PSSOF 19.)
6  She can no longer engage in sporting activities with her children, go for walks or
7  hikes, or go to shopping malls as often or for as long as she did in the past. (PSSOF
8  2, 3, 6, 7.) Her physical limitations have reduced the quantity and quality of her time
9  with her children.

10  Astrid Dobek's condition has caused her significant pain and she has become
11  "profoundly" depressed. (PSSOF 24.) *See Miller v. Westcor Ltd. Partnership* 171
12  Ariz. 387, 395, 831 P.2d 386, 394 (App. 1991) (holding that parents were entitled to
13  take loss of consortium claim to the jury where their severely-burned daughter "will
14  experience self-image problems [and b]ecause of her self-image problems . . . may not
15  develop the intellectual and social potential of a person without severe burns). Her
16  medications affect her ability to perform activities of daily living and are known to
17  have consciousness-clouding side effects. (PSSOF 52, 53, 54, 55, 56.) She suffers
18  from a diminished cognitive ability and memory problems. (PSSOF 52-54.) She
19  feels that she is a burden to her children and of little use to them. (PSSOF 34, 48.) In
20  July, 2006, Astrid Dobek attempted suicide. (PSSOF 48.) *See Barnes*, 192 Ariz. at
21  286, 964 P.2d at 487 (holding that defendants were not entitled to judgment as a
22  matter of law on plaintiff's loss of consortium claim stemming from her spouse's
23  purely emotional injuries).

### Recommendation

25  For the foregoing reasons, the Magistrate Judge recommends the District
26  Court, after its independent review of the record, enter an order DENYING Defendant

Wal-Mart Stores, Inc.'s ("Walmart") Motion for Summary Judgment on Loss of Consortium Claims of Astrid Dobek's Children filed on January 26, 2007 (Doc. No. 81).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. Any objections filed should use the following case number: CV03-297- TUC-FRZ. If objections are not timely filed, they may be deemed waived.

DATED this 15th day of May, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge